THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN MOFFA, DEFENDANT-RESPONDENT.

Argued April 7, 1964—Decided May 4, 1964.

*Mr. Norman Heine,* Camden County Prosecutor, argued the cause for plaintiff-appellant (*Messrs. Anthony M. Bezich* and *Arthur Batoff,* on the brief).

*Mr. C. Zachary Seltzer* argued the cause for defendant-respondent (*Mr. Angelo D. Malandra,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The defendant, a City of Camden police detective, was convicted after a jury trial on an indictment charging that he suborned one Butler Blevins to swear falsely before the Camden County Grand Jury, which was then investigating official misconduct and corruption within the Police Department of Camden, in violation of *N. J. S.* 2A:85–14 (aiding and abetting) and *N. J. S.* 2A:131–4 (false swearing).[1]

On his appeal to the Appellate Division, the defendant raised several grounds for reversal. That court found no merit in any of them except his contention that the trial court erred in refusing to grant his motion for judgment of acquittal at the end of the State's case. In its view the proofs introduced on the State's case contained no evidence "from which it might legitimately be inferred that Moffa had suborned Blevins to testify falsely under oath before the Camden County Grand Jury as charged in the indictment." Therefore, the Appellate Division felt constrained under the decisions of this State (*e. g., State v. Fox,* 12 *N. J. Super.* 132, 135 (*App. Div.* 1951); *State v. Bacheller,* 89 *N. J. L.* 433, 435 (*Sup. Ct.* 1916)) to reverse the conviction even though it found that the evidence adduced on the defendant's case supplied the missing proof and thus at the end of the entire case there was sufficient evidence to submit the question of his guilt to the jury. *State v. Moffa,* 79 *N. J. Super.* 425 (1963). We granted the State's petition for certification. 41 *N. J.* 122 (1963).

---

[1] In a prior proceeding in this matter we affirmed an order of the trial court granting defendant's motion for pretrial inspection of Blevins' testimony before the grand jury. *State v. Moffa,* 36 *N. J.* 219 (1961), affirming 64 *N. J. Super.* 69 (*Law Div.* 1960).

█ The State argues before us that there was ample proof at the end of its case to warrant the trial court's denial of defendant's motion to acquit. It further contends that we should abandon the New Jersey rule for appellate review of a motion to acquit made at the end of the State's case and should adopt the rule followed by the majority of jurisdictions to the effect that a defendant who introduces evidence on his own behalf after a denial of his motion for acquittal is deemed to have waived his objection to the ruling on that motion. See, e. g., *United States v. Calderon*, 348 *U. S.* 160, 164, 75 *S. Ct.* 186, 188, 99 *L. Ed.* 202, 207 (1954) ; Annotation 17 *A. L. R.* 910, 925 (1922) ; but see Comment, "The Motion for Acquittal," 70 *Yale L. J.* 1151 (1961). We need not reconsider the present New Jersey rule which requires an appellate court, in determining the propriety of the trial court's ruling, to view the evidence as it existed at the time the motion was made (see *State v. Fiorello*, 36 *N. J.* 80, 86–87 (1961)), since we are satisfied that at the close of the State's case here, there was evidence tending to prove the guilt of the defendant sufficient for submission to the jury.

The State presented the following proofs. Butler Blevins, an attendant at the City of Camden Garage, appeared before the Camden County Grand Jury on April 5, 1960, in response to a subpoena served on him approximately one week before that date. He was duly sworn and testified that on January 3, 1959, he paid John Moffa $1,500 as a down payment on the purchase of a house at 528 West Street, Camden. He produced and delivered to the grand jury a receipt for the payment signed by Moffa and dated January 3, 1959. He said that he was buying the house under an oral agreement which provided for a sales price of $6,000, a down payment of $1,500, and monthly payments of $50 from which were to be deducted the taxes, water and sewer rents, and interest on the balance due. Following extensive questioning by the prosecutor and members of the grand jury, Blevins recanted and told them that his testimony as to the aforesaid $1,500 payment was false, that he had never in fact paid Moffa $1,500

in one lump sum or separately, and that he lied to them because Moffa had asked him to tell "anyone" who asked that the payment had in fact been made. It was brought out during the examination of the grand jury court stenographer that Moffa had appeared before that body on March 16, 1960, at which time he produced certain receipts for payments made to him by Blevins with respect to the purchase of the house.

Blevins testified for the State that about a month prior to his appearance before the grand jury on April 5, 1960, Moffa, whom he had known for 10 or 15 years, visited him at the City Garage at night while he was working, gave him a receipt dated January 3, 1959, reciting the payment of $1,500 as a down payment on the house at 528 West Street (in which Blevins was then living), and told him, "If anyone asks you did you give me $1,500, tell them yes." The conversation, according to Blevins on cross-examination, went no further than that; Moffa mentioned no names, nor did he indicate in any way that Blevins was to state this to the prosecutor or the grand jury. He further testified that he had never in fact paid Moffa the $1,500, and that his testimony to that effect before the grand jury was false.

Blevins took possession of the house on West Street at the end of March 1959 and began at that time to pay Moffa $50 a month. Until the time of his appearance before the grand jury, Blevins received from Moffa "rent" receipts for the payments. The $50 payments continued thereafter up until the time of trial, but the subsequent receipts stated the payments were on account of the purchase price. Blevins testified that he had never received a written agreement concerning the transaction. However, on cross-examination he identified his signature and that of his wife on an agreement to buy the house, dated January 3, 1959, on terms substantially the same as those he mentioned to the grand jury. He said he recalled signing this document, although he had not read it, and that it was signed at 528 West Street sometime after he appeared before the grand jury.

■ The above evidence constitutes the substance of the State's direct proof. The test to be applied in determining the sufficiency of the proof on a motion to acquit is whether the evidence viewed in its entirety and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged. *State v. Fiorello, supra,* at *p.* 90. This test governs not only the trial judge's consideration of the motion, but also appellate review of his ruling. *Ibid.*

■ In this case the State was required to prove that Blevins swore falsely before the grand jury and that he did so because of the defendant's request. *State v. Moffa,* 36 *N. J.* 219, 221 (1961). Blevins' testimony both before the grand jury and at the present trial that he lied when he told the grand jury he paid Moffa $1,500 is sufficient evidence of the falsity of his statement. Thus the crucial question in ruling on the motion was whether there was sufficient evidence, direct or circumstantial, that the defendant persuaded Blevins to lie to the grand jury. From the testimony of Blevins before the grand jury that he lied to them because Moffa asked him to, the jury could find that Blevins interpreted the word "anyone" in Moffa's request to include the grand jury. The State contends that the jury could reasonably believe that "anyone" was intended by the defendant to include all occasions in which the subject might be broached, not excluding an official occasion or one attended by the solemnity of an oath. On the other hand, the defendant contends that there was no evidence tending to show that Moffa believed that Blevins was likely to be called before the grand jury or that he requested Blevins to take a false oath before that body.

Standing alone, the evidence that Moffa asked Blevins to lie to "anyone" might be insufficient to prove that Moffa intended that Blevins should lie to the grand jury. However, the circumstances of the meeting of Moffa and Blevins, which occurred about two weeks before Moffa testified before the

grand jury and about one month prior to Blevins' appearance, bespeak some hidden mutual understanding.  Only one sentence was spoken, *viz.:*  Moffa told Blevins, "If anyone asks you did you give me $1,500, tell them yes."  But, the delivery of a false receipt to document the lie is highly significant to an understanding of what transpired.  This cryptic request to lie, accompanied by the transfer from Moffa to Blevins of a false receipt for $1,500, dated some 13 months before its delivery, would support an inference that Moffa anticipated some inquiry about the transaction.  Since a receipt speaks for itself, the oral request was unnecessary and without meaning unless some investigation of the transaction was imminent.  Further, the jury could believe that the buyer of a house, who had not in fact paid $1,500 as a down payment, would question his seller when asked to lie about it.  Blevins, who had known Moffa for 10 or 15 years, asked for no explanation and the jury could infer that both he and Moffa fully understood the purpose of the request and the nature of the inquiry anticipated by Moffa, *viz.,* an investigation by the grand jury, which in fact took place shortly thereafter.  Or the jury could believe that such a request by a police officer to a friend would be obeyed in the event of an official inquiry such as one by a grand jury and that Moffa would realize the efficacy of such a request.  Moffa did not discuss the matter again with Blevins between the time of the alleged conversation and April 5, 1960, when Blevins appeared before the grand jury.  Moffa appeared before that body on March 16, 1960, and was questioned at that time regarding the sale of his house to Blevins.  And the jury could believe that Moffa, recognizing that the grand jury in pursuing its inquiry might seek verification from Blevins and realizing the significance of his prior conversation, would have amended his request to make it clear that he did not want Blevins to lie to that body, if that were not in fact his intention.  From this evidence a jury could reasonably find that Moffa intended Blevins to lie to the grand jury and that he effectively communicated that intention to Blevins, who subsequently followed his wishes.

■ We are convinced that, considered in a light most favorable to the State, the evidence at the end of its case was sufficient for the trial judge to submit the question of defendant's guilt to the jury. Accordingly, we hold that the trial court properly denied defendant's motion for acquittal and that the Appellate Division's ruling to the contrary was erroneous.

■ Defendant alternatively contends that the verdict of the jury was against the weight of the evidence. Although the defendant categorically denied his guilt and insisted that the $1,500 payment had been made, his case did not substantially weaken that of the State, but on the contrary, as found by the Appellate Division, strengthened the evidence tending to prove guilt because of the proof of additional circumstances which showed a motive for the subornation (*e. g.,* the defendant had detailed the Blevins transaction, including payment by Blevins of $1,500, in an official questionnaire dated February 16, 1960, for the use of the grand jury in connection with the investigation described in the indictment), and because of inconsistencies in his testimony which affected his credibility. We are satisfied that the verdict in this case was not the result of mistake, partiality, prejudice, or passion, and in the absence of such a showing, this court will not disturb the finding of a jury. *R. R.* 1:5–1(a).

We have considered defendant's challenges to the indictment, to the trial court's rulings on the admission and exclusion of evidence, to the instructions to the jury, and his challenge to the grand jury proceedings, and find nothing that would warrant reversal of the conviction.

The judgment of the Appellate Division is reversed and the judgment of conviction entered in the trial court is reinstated.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.