818 A.2d 487 (2003)
358 N.J. Super. 578
STATE of New Jersey, Plaintiff-Respondent,
v.
Niki E. HARRISON, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Shawn L. Spivey, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2002.
Decided March 27, 2003.
*488 Yvonne Smith Segars, Public Defender, for appellants (Douglas A. Cole, of counsel and on the brief in A-6901-99T4; Michael Confusione, Designated Counsel, of counsel and on the brief in A-0617-00T4).
Theodore J. Romankow, Union County Prosecutor, for respondent (Steven J. Kaflowitz, of counsel, and Diane Medcraft, on the brief in A-6901-99T4; Ms. Medcraft of counsel and on the brief in A-0617-00T4).
Before Judges WECKER, LISA and FUENTES.
The opinion of the court was delivered by WECKER, J.A.D.
We find it appropriate to address the separate appeals of co-defendants Shawn L. Spivey and Niki Harrison in one opinion. We affirm both defendants' convictions.
A Union County grand jury returned a ten-count indictment charging both Spivey and Harrison on the first seven counts as follows: third-degree possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession of a controlled dangerous substance (cocaine in a quantity of half an ounce or more) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2) (count two); second-degree possession of a controlled dangerous substance with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count three); fourth-degree possession of a controlled dangerous substance (marijuana in a quantity over fifty grams), N.J.S.A. 2C:35-10(a)(3) (count four); third-degree possession of a controlled dangerous substance (marijuana in a quantity of one ounce or more) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(11) (count five); third-degree possession of a controlled dangerous substance (marijuana in a quantity of one ounce or more) with intent to distribute, within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count six); and second-degree possession of a firearm while in the course of committing or attempting to commit a narcotics offense, N.J.S.A. 2C:39-4.1 (count seven).
*489 In addition, Spivey alone was charged on counts eight, nine and ten: second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count eight); third-degree aggravated assault upon a police officer, N.J.S.A. 2C:12-1(b)(5) (count nine); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a). Count eight was dismissed at trial. The jury found Spivey guilty on all of the remaining counts. The same jury found Harrison guilty on counts one, three and seven.
Harrison was sentenced to concurrent five-year terms on two counts of possession with intent to distribute and a consecutive five-year term for possession of a firearm while in the course of committing the drug offenses.
Spivey received concurrent mandatory extended terms of eighteen years on counts three and six, see N.J.S.A. 2C:43-7a(3), each with a nine-year period of parole ineligibility; a mandatory consecutive nine-year term on count seven, see N.J.S.A. 2C:39-4.1, with four years of parole ineligibility; and a five-year term on count nine with two years of parole ineligibility. Defendant's sentence on count seven was imposed consecutive to his sentences on counts three and six, and his sentence on count nine was consecutive to count seven as well as counts three and six. Thus defendant's aggregate sentence was thirty-two years with fifteen years of parole ineligibility.
On her appeal, Harrison presents these arguments:
POINT I THE JURY'S FINDING THAT DEFENDANT HAD CONSTRUCTIVE POSSESSION OF CO-DEFENDANT'S CONTROLLED DANGEROUS SUBSTANCES AND FIREARMS WAS AGAINST THE WEIGHT OF THE EVIDENCE.
POINT II THE JURY'S FINDING THAT DEFENDANT HAD INTENT TO DISTRIBUTE CO-DEFENDANT'S CONTROLLED DANGEROUS SUBSTANCE WAS AGAINST THE WEIGHT OF THE EVIDENCE.
POINT III THE TRIAL COURT ERRED IN NOT ALLOWING CROSS EXAMINATION ABOUT THE PROBABLE CAUSE FOR THE SEARCH WARRANT.
Our review of the record and the briefs satisfies us that all of Harrison's arguments are without merit, and we affirm. See R. 2:11-3(e)(2).
On his appeal, Spivey presents these arguments:
POINT I THE TRIAL COURT ERRED IN PRECLUDING DEFENDANT FROM INTRODUCING EVIDENCE OF PRIOR POLICE MISCONDUCT AND CHARGES OF FABRICATION AT TRIAL.
POINT II THE TRIAL COURT ERRED IN CONCLUDING THAT THE STATE PRODUCED SUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION UNDER COUNT 7, POSSESSION OF A FIREARM WHILE IN THE COURSE OF COMMITTING A NARCOTICS OFFENSE.
POINT III THE TRIAL COURT ERRED IN ADMITTING THE DEFENDANT'S PRIOR CONVICTIONS INTO EVIDENCE.
POINT IV THE SENTENCE IMPOSED BY THE COURT IS EXCESSIVE.
We find insufficient merit in the arguments raised in Spivey's Points I, III, and IV to warrant extended discussion in a *490 written opinion. See R. 2:11-3(e)(2). We also reject defendant's argument in Point II respecting his conviction under N.J.S.A. 2C:39-4.1. However, the issue Spivey raises respecting the offense of possession of a firearm while in the course of certain narcotics offenses merits discussion.
We briefly summarize the facts adduced by evidence at trial. As a result of several controlled drug buys from defendant Spivey, the Plainfield Police Department obtained a no-knock search warrant for the apartment shared by defendants Spivey and Harrison, who are a married couple and the parents of young children. The warrant also allowed police to detain and search Spivey's person. Two teams of police were dispatched to execute the warrant on the apartment. As they arrived, they noticed Spivey on the street outside the apartment. One team entered the apartment, where they found Harrison standing in the kitchen. They handcuffed her and seated her in the kitchen while they searched the apartment. They also found the defendants' five-year-old son under a bed.
While one team secured the apartment, the officers who spotted Spivey across the street attempted to detain him. When Detective Plum attempted to block Spivey's path, out of concern that he would try to escape once he saw the police, Spivey knocked the officer down. As a result of the attack, Detective Plum suffered a concussion and a broken nose. At trial, Spivey admitted his attack on Detective Plum, but claimed that he did not know he was hitting a police officer. He also denied knowledge of the drugs and weapon found in the apartment, but claimed that the cash was his, the proceeds of a legitimate enterprise breeding pit bull terriers. Harrison also denied any knowledge of the drugs, paraphernalia, gun, or ammunition found in the apartment. Two neighbors testified on Spivey's behalf with respect to the assault charges, disputing the police witnesses' version of events.
Spivey sought to defend the charges by proving that the police planted all of the evidence in retaliation for an incident that had occurred four years earlier, and that Officer Plum had a propensity for violence. The trial judge noted the inconsistency between Spivey's contention that he did not know Plum was a police officer when he hit him, but that Plum's past behavior with an unrelated target of police suspicion established Plum's propensity and reputation for violence, which explained Spivey's conduct. In any case, Spivey did not have admissible evidence to support either the planted-evidence defense or the violent-officer defense, and Judge Barisonek's rulings in limiting certain testimony represent reasonable exercises of a trial judge's discretion.
After Spivey was subdued and the apartment secured, officers brought him from the street into the apartment. He was also handcuffed and seated in the kitchen. In the course of searching the apartment, police found in defendants' bedroom a blue bag on a table that contained approximately 700 grams of marijuana and hundreds of Ziploc bags. They also found vials of cocaine, a digital scale, a police scanner, and more than $7,000 in cash. In the kitchen, the search produced additional marijuana, a .22 caliber revolver, hollow point bullets, rounds of ammunition, and another cylinder for a.22 caliber pistol. In a pen in the backyard, the police found eight pit bull terriers.
N.J.S.A. 2C:39-4.1a provides, in relevant part, that "[a]ny person who has in his possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of [a drug offense involving distribution or intent to distribute] is guilty of a crime of the second *491 degree." Spivey argues that the trial judge erred in denying his motion to dismiss count seven. He contends that even if he is guilty of the charges of possession of cocaine and marijuana with intent to distribute, as a matter of law the evidence does not support his conviction for possession of a firearm while in the course of committing the drug offenses.
Spivey argues that an essential element of the crime is either actual physical possession or "constructive possession of a weapon in close proximity to the defendant" during his commission of the drug offense. Because he was arrested on the street and found to be in constructive possession of a gun that was inside his apartment at the time, Spivey argues that the State has not established his proximity to the gun, and therefore has failed to prove an essential element of the firearms offense. We disagree.
To support his contention that he cannot be guilty of the firearms offense because of his constructive rather than actual possession and lack of proximity to the weapon, Spivey compares other crimes which are defined or raised to a higher degree when a firearm is used "while in the course of committing" an underlying offense. Spivey cites State v. Butler, 89 N.J. 220, 445 A.2d 399 (1982) (requiring actual possession of a deadly weapon to raise a robbery to a first-degree offense pursuant to N.J.S.A. 2C:15-1(b)); State v. Garretson, 313 N.J.Super. 348, 359, 712 A.2d 1226 (App.Div.) (carjacking, as defined by N.J.S.A. 2C:15-2, is established by certain conduct "in the course of committing an unlawful taking of a motor vehicle," which includes the attempt to take, the actual taking, or immediate flight from such attempt or taking), certif. denied, 156 N.J. 428, 719 A.2d 1026 (1998); State v. Stewart, 96 N.J. 596, 601, 477 A.2d 300 (1984) (describing a Graves Act offense as one in which the perpetrator "uses or possesses a firearm while committing, attempting to commit, or fleeing after the commission" of the underlying crime). These comparisons are inapposite. Each involves physical action, whereas the crime in issue here involves possession and intent to act, but not necessarily action.
In fact, in Stewart the Court expressly notes that "[i]t is the mere presence of guns at the scene of crimes that this statute seeks to end." 96 N.J. at 602, 477 A.2d 300. That is precisely what N.J.S.A. 2C:39-4.1 seeks to end: the "mere presence of guns" at the scene where the drug offense is committed and the threat of violence posed when guns are available to a drug dealer. What Spivey's argument fails to appreciate is that his apartment was the scene of the crime in this case, and the underlying crime of possession of CDS "with intent to distribute" is a crime that can be proved irrespective of the possessor's physical presence alongside the drugs. It is enough that he had the ability to control the drugs and the gun in his apartment. Whether he actually possesses the gun in the sense that he is carrying it on his person, or he constructively possesses the gun in the same way that he constructively possesses the drugs, he is still guilty of the offense defined by N.J.S.A. 2C:39-4.1: possession of a firearm while also in possession of illegal drugs with intent to distribute same.
The very fact that Spivey's predicate crime involved the intent to distribute the drugs found in his apartment makes his constructive possession of the gun found in the same apartment close enough in time and proximity to support this conviction. Clearly the rationale for the statute is to deter and punish the involvement of drug dealers with firearms and the risk of violence engendered by mixing guns with illegal drug distribution.
*492 We have found no legislative history of the statute codified at N.J.S.A. 2C:39-4.1 that explicitly addresses the required proximity between weapon, drugs, and perpetrator to support a conviction. What is plain in the history, as in the language of the statute itself, as considered both by the Assembly and the Senate, is the Legislature's unambiguous intention to raise significantly the penalties for certain drug offenses, including possession with intent to distribute, when committed in combination with the possession of a weapon. The highest penalty applies when the weapon is a firearm. The statute not only defines such firearm possession as a second-degree crime, but also mandates a sentence consecutive to the sentence imposed for the underlying drug offense. The statute also bars merger of the 2C:39-4.1 offense with either the underlying drug crime or any other crime involving the weapon possessed.
We note that the statute at issue, N.J.S.A. 2C:39-4.1, enacted by L.1998, c. 26, § 1, effective June 24, 1998, appears to have been part of the Legislature's response to then Attorney General Peter Verniero's recommendation to Governor Christine Todd Whitman, dated December 9, 1996. See "Report to the Governor by the Attorney General on the Need to Update the Comprehensive Drug Reform Act of 1987."[1] One of the new laws recommended by the Attorney General included the following provision:
Any person who knowingly has in his possession a firearm while engaged in the unlawful manufacture, distribution, possession with intent to distribute, or possession of a controlled dangerous substance or controlled substance analog commits a crime of the second degree.
[Id. at A-51]
Compare the legislation enacted as N.J.S.A. 2C:39-4.1a, which we repeat here:
Any person who has in his possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of [chapter 35 offenses, including possession with intent to distribute], is guilty of a crime of the second degree.
Contrary to the Governor's proposal and the Attorney General's Report, the new crime enacted by the Legislature did not include among the predicate drug offenses mere possession of a controlled dangerous substance. In other respects, it is similar to the Attorney General's proposal. The *493 Attorney General's proposal refers to possession of a firearm "while engaged in ... possession with intent to distribute a controlled dangerous substance," whereas the law as enacted refers to possession of a firearm "while in the course of committing" certain crimes, including possession with intent to distribute a controlled dangerous substance. We do not perceive any legislative intent to narrow the new crime, consisting of a combination of firearms and drug possession, other than to omit from the new crime a combination of firearms possession and illegal drug possession solely for personal use.
We agree that some nexus is required between the drugs and the weapons constructively possessed in order to prove the crime defined by N.J.S.A. 2C:39-4.1. We shall not attempt to define the boundaries of that nexus. Suffice it to say that the facts inferrable by the jury from the evidence in this case provide a sufficient nexus to establish the crime. In effect, Spivey is attempting to challenge the long-established principle of constructive possession as it relates both to the gun and the drugs found in his home. We reject that attempt. The facts supporting constructive possession of the drugs and the gun are the same. Both were in his apartment, he knew they were there, and he had free access to both.
Judge Barisonek correctly instructed the jurors that they could find each defendant guilty of the firearms offense if they found joint, constructive possession of the gun in the kitchen cabinet as well as joint constructive possession with intent to distribute the cocaine or marijuana found in their apartment. Evidence that the gun and the drugs were found in close proximity to each other in defendants' apartment, and that Spivey and Harrison each were in constructive possession of both, clearly satisfies the definition of the crime. Moreover, finding the evidence sufficient is consistent with the Legislature's expressed rationale for criminalizing the combined possession of a gun and illegal drugs intended for distribution.
Affirmed.
NOTES
[1] The Report states that the recommendations discussed therein "were first suggested in Governor Whitman's Drug Enforcement, Education and Awareness Program." Id. at i. The "Executive Summary" introducing that Report includes the following Specific Recommendation # 4:

We must address the use of firearms by drug dealers and users. A new offense should be created for possessing a firearm while one unlawfully possesses a controlled dangerous substance. Where a person is convicted of a firearms violation, the sentence should be made consecutive to the sentence imposed on a drug offense committed at the same time. Furthermore, the exemption in current law for firearms possessed in a residence or place of business should not apply if a controlled dangerous substance is knowingly and unlawfully manufactured, distributed or possessed in the premises.
[Id. at ii. (Emphasis added).]
The discussion of recommendation # 4 in the Report includes the following:
Firearms have become ubiquitous in the world of illegal drug activity. Dealers are armed to protect themselves from law enforcement officers, from other dealers and from their customers. Some drug users are armed because they must commit crimes to support their habits. The combination of illegal drug use and firearm possession is intolerable, because drugs impair judgment and, in some instances, cause paranoia and incite mindless violence.
[Id. at 10.]