844 A.2d 512

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SHAWN L. SPIVEY, DEFENDANT–APPELLANT.

Argued January 21, 2004—Decided April 1, 2004.

*Michael J. Confusione,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Steven J. Kaflowitz,* Assistant Prosecutor, argued the cause for respondent (*Theodore J. Romankow,* Union County Prosecutor, attorney).

Justice ALBIN delivered the opinion of the Court.

A person who possesses a firearm "while in the course of" possessing with intent to distribute a controlled dangerous substance within 500 feet of a public park commits a second-degree crime. *N.J.S.A.* 2C:39–4.1a. In this case, defendant was arrested outside his apartment building as the police began a search of his apartment that uncovered a sizeable stash of drugs and a loaded gun. We must determine whether that evidence was sufficient to convict defendant under *N.J.S.A.* 2C:39–4.1a.

## I.

On September 9, 1998, two teams of officers of the Plainfield Police Department—designated perimeter and search teams—

executed a no-knock warrant to search the person and home of defendant Shawn L. Spivey, who lived in a second-floor apartment in Plainfield, with his wife, codefendant Niki Harrison, and their two young children. The police officers wore windbreakers with the insignia "Police" on the front and back of their jackets. The perimeter team sighted defendant across the street from his apartment building and immediately moved to secure him while the search team forced its way into the apartment by use of a battering ram. Defendant resisted as Officer Jerry Plum attempted to detain him, striking the officer in the side of the head and causing him to fall to the ground and lose consciousness. Officer Plum suffered a concussion and fractured nose. Defendant was arrested, handcuffed, and brought into the apartment.

Inside the apartment, the officers found Harrison in the kitchen and their five-year-old son hiding under a bed in one of the bedrooms. After the residents of the apartment were secured, the officers proceeded to search the apartment. In one bedroom, they found a blue bag containing approximately 700 grams of marijuana and several hundred new and unused small Ziploc bags; a sneaker box containing twenty vials of cocaine; a digital scale and razor blades on the dresser; over $7,000 in cash in a dresser drawer; and a police scanner. The officers also retrieved from a kitchen cabinet a .22 caliber revolver loaded with five hollow point bullets, an additional cylinder for that revolver, and six Ziploc bags containing marijuana. Defendant's apartment was located less than 500 feet from a public park.

Defendant and Harrison testified that they had no knowledge that drugs, drug paraphernalia, and a gun were in their apartment. Defendant explained that the $7,000 in cash in the dresser drawer was the proceeds of his sale of several pit bulls. He also claimed that when Officer Plum grabbed him he struck Plum not realizing that he was a police officer. Two witnesses who testified for defendant stated that the police used excessive force in subduing defendant. In summation, defense counsel argued that the

police planted the drugs in the apartment in retaliation for a prior altercation that defendant had with a Plainfield police officer.

The jury convicted defendant and Harrison of a number of drug-related offenses contained in a multi-count indictment. In particular, defendant was convicted of possession of a controlled dangerous substance (CDS), a third-degree offense in violation of *N.J.S.A.* 2C:35–10a(1) (count one); possession of a CDS with intent to distribute, a second-degree offense in violation of *N.J.S.A.* 2C:35–5a(1), b(2) (count two); possession of a CDS with intent to distribute within 500 feet of a public park, a second-degree offense in violation of *N.J.S.A.* 2C:35–7.1 (count three); possession of a CDS, a fourth-degree offense in violation of *N.J.S.A.* 2C:35–10a(3) (count four); possession of a CDS with intent to distribute, a third-degree offense in violation of *N.J.S.A.* 2C:35–5a(1), b(11) (count five); possession of a CDS with intent to distribute within 500 feet of a public park, a third-degree offense in violation of *N.J.S.A.* 2C:35–7.1 (count six); possession of a firearm while in the course of committing a drug offense, a second-degree offense in violation of *N.J.S.A.* 2C:39–4.1a (count seven); aggravated assault upon a police officer, a third-degree offense in violation of *N.J.S.A.* 2C:12–1b(5) (count nine); and resisting arrest, which had been downgraded by the trial court to a disorderly persons offense, in violation of *N.J.S.A.* 2C:29–2a (count ten). The trial court dismissed count eight, which charged defendant with aggravated assault, a second-degree crime in violation of *N.J.S.A.* 2C:12–1b, because there was insufficient evidence that defendant caused or attempted to cause serious bodily injury to Officer Plum.

The trial court sentenced defendant on count three to an extended term of eighteen years with a nine-year parole disqualifier, on count seven to a consecutive term of nine years with a four-year parole disqualifier, and on count nine to a consecutive term of five years with a two-year parole disqualifier. The trial court also sentenced defendant on count six to an extended term of eighteen years with a nine-year parole disqualifier concurrent to count

three and on count ten to a 180–day term concurrent to counts three, six, and seven.[1] The remaining counts were merged into those counts on which defendant was sentenced. In all, defendant received an aggregate state prison term of thirty-two years with fifteen years of parole ineligibility.

Defendant raised a number of issues on appeal, but the Appellate Division found only one to have sufficient merit to warrant discussion. The appellate panel specifically addressed defendant's claim that, at the conclusion of the State's case, the trial court erred in denying his motion for a judgment of acquittal on the charge of possession of a firearm while in the course of committing a drug offense within 500 feet of a public park. The panel, in a well-reasoned opinion by Judge Wecker, upheld defendant's convictions and found that the State satisfied its burden of proof under *N.J.S.A.* 2C:39–4.1a by showing that defendant jointly and constructively possessed both the drugs and the firearm, which were in close proximity to each other. *State v. Harrison,* 358 *N.J.Super.* 578, 587, 818 *A.*2d 487, 493 (App.Div.2003). We granted defendant's petition for certification, 177 *N.J.* 495, 828 *A.*2d 922 (2003), and now affirm.

## II.

Defendant contends that to sustain a conviction of possession of a firearm while in the course of committing a drug offense the State must prove that he actually possessed the weapon or constructively possessed it in close physical proximity to his person at the time he committed the predicate drug offense. Defendant argues that the State failed to do so and that the trial court erred in denying his motion for a judgment of acquittal pursuant to *Rule* 3:18–1. The State responds that defendant's joint and constructive possession of the drugs and the firearm in

---

[1] Defendant has not raised on appeal or in his petition whether a concurrent extended term falls within the prohibition of *N.J.S.A.* 2C:44–5a(2) (stating that "[n]ot more than one sentence for an extended term shall be imposed").

his apartment in the circumstances of this case was sufficient for a conviction under *N.J.S.A.* 2C:39–4.1a. In reviewing whether the trial court properly denied the motion for a judgment of acquittal, we must view the State's evidence "in its entirety and giv[e] the State the benefit of all its favorable testimony and all of the favorable inferences" to be drawn from that testimony to determine whether a jury could find guilt beyond a reasonable doubt under the statute. *State v. Moffa,* 42 *N.J.* 258, 263, 200 *A.*2d 108, 110 (1964) (citing *State v. Fiorello,* 36 *N.J.* 80, 90, 174 *A.*2d 900 (1961), *cert. denied,* 368 *U.S.* 967, 82 *S.Ct.* 439, 7 *L.Ed.*2d 396 (1962)); *State v. Reyes,* 50 *N.J.* 454, 458–59, 236 *A.*2d 385, 387 (1967). If the evidence satisfies that standard, the motion must be denied.

■■■■ *N.J.S.A.* 2C:39–4.1a provides that "[a]ny person who has in his possession any firearm while in the course of committing, attempting to commit, or conspiring to commit" the drug offenses specified in the statute, such as possessing with intent to distribute a CDS within 500 feet of a public park in violation of *N.J.S.A.* 2C:35–7.1, is guilty of a crime of the second degree. *N.J.S.A.* 2C:39–4.1a.[2] We must determine whether defendant simultaneously possessed the firearm and drugs and, if so, whether the firearm was possessed "while in the course of committing" a statutorily specified crime. We begin our analysis by noting that an object may be actually or constructively possessed. *State v. Schmidt,* 110 *N.J.* 258, 270, 540 *A.*2d 1256, 1262 (1988); *State v. Stewart,* 96 *N.J.* 596, 603, 477 *A.*2d 300, 303–04 (1984). A person actually possesses an object when he has physical or manual control of it. *State v. Brown,* 80 *N.J.* 587, 597, 404 *A.*2d 1111, 1116 (1979). A

---

[2] *N.J.S.A.* 2C:39–4.1a states:

Any person who has in his possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of *N.J.S.* 2C:35–3, *N.J.S.* 2C:35–4, *N.J.S.* 2C:35–5, section 3 or section 5 of P.L. 1997, c. 194 (C. 2C:35–5.2 or 2C:35–5.3), *N.J.S.* 2C:35–6, section 1 of P.L. 1987, c. 101 (C. 2C:35–7), section 1 of P.L. 1997, c. 327 (C. 2C:35–7.1), *N.J.S.* 2C:35–11 or *N.J.S.* 2C:16–1 is guilty of a crime of the second degree.

person constructively possesses an object when, although he lacks "physical or manual control," the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time. *Schmidt, supra,* 110 *N.J.* at 270, 540 *A.*2d at 1262.

A person does not abandon legal possession of the items in his home every time he exits the front door. *See State v. Merritt,* 247 *N.J.Super.* 425, 430, 589 *A.*2d 648, 650 (App.Div.) ("[A] person who stores firearms in his home would be considered to be in possession of the firearms when he is away from home . . . ."), *certif. denied,* 126 *N.J.* 336, 598 *A.*2d 893 (1991). A person who leaves his tennis racket behind as he goes to work retains constructive possession of that racket so long as he has the intent and ability to exercise control over it some time in the future, say, to play tennis. The evidence here permitted the jury to draw the reasonable inference that defendant had the intention and capacity to exercise dominion over the loaded .22 caliber revolver and marijuana found in the kitchen cabinet, as well as the drug paraphernalia and significant quantities of marijuana and cocaine found in the bedroom. The jury was entitled to find that defendant constructively possessed the firearm and drugs and to reject defendant's argument that the police planted the drugs in the apartment.

Next, we must determine whether the evidence supports the jury finding that defendant possessed the firearm "while in the course of committing" the drug offense. Defendant contends that he must be acquitted because he was detained outside his apartment building at the time the drugs and handgun were found inside the apartment and, therefore, could not commit an offense under *N.J.S.A.* 2C:39–4.1a. In support of that position, defendant relies on *State v. Stewart,* 96 *N.J.* 596, 477 *A.*2d 300 (1984), in which this Court interpreted language in the Graves Act, *N.J.S.A.* 2C:43–6, similar to that of *N.J.S.A.* 2C:39–4.1a. In *Stewart,* the defendant challenged the application of the Graves Act to the facts

of his case. *Id.* at 601, 477 *A.*2d at 302. The Graves Act provides for mandatory minimum prison terms for those defendants convicted of using or possessing a firearm while in the commission of certain designated crimes, such as robbery. *Id.* at 599 n. 1, 477 *A.*2d at 301 n. 1. The jury in *Stewart* found the defendant guilty of robbery and, in a special interrogatory, found that he committed the crime while either using or possessing a firearm. *Id.* at 600, 477 *A.*2d at 302.[3] The defendant, a passenger in a truck, had a flare gun on the dashboard when he committed a street robbery. *Ibid.* The Court held "that possession of a firearm for purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession." *Id.* at 604, 477 *A.*2d at 304. Accordingly, the Court instructed the trial court to determine at a hearing before sentencing whether the defendant had the ability to exercise actual and imminent control of the gun on the dashboard while he committed the robbery. *Id.* at 605–06, 477 *A.*2d at 304–05. In reaching its conclusion, the Court noted that "the goal of the Graves Act is to remove guns from the scene of crimes. Any gun within easy reach of any participant in a criminal episode invites violence." *Id.* at 604, 477 *A.*2d at 304.

Possessing a firearm while in the course of committing a robbery is distinct from possessing such a weapon while in the course of committing the crime of drug possession with intent to distribute. The scene of a robbery and many other violent crimes is wherever the defendant accosts his victim. The unarmed

---

[3] The jury found the defendant not guilty of conspiracy to commit robbery, armed robbery, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. *Id.* at 600, 477 *A.*2d at 302.

We held in *Stewart* that the trial court, rather than the jury, had the statutory obligation to determine whether the Graves Act applied to the crime of which defendant was convicted. *Id.* at 605–06, 477 *A.*2d at 304–05. That decision was to be made based on information ordinarily available to the sentencing court. *Id.* at 606, 477 *A.*2d at 305. In Graves Act cases, the trial court is governed by the preponderance of the evidence standard in deciding whether a firearm is possessed during the commission of the crime. *Ibid.*

defendant who perpetrates a robbery in an alleyway has not committed an armed robbery if he leaves his gun at home, even though he is in constructive possession of the weapon. That is so because there is no nexus between the firearm and the crime. In this case, defendant's loaded .22 caliber handgun and the drugs were located at the scene of the crime, his home, where he had the ability to access both simultaneously. The gun and drugs were in close proximity to each other, and a jury could infer that both were within defendant's control. As the jury could infer that defendant possessed the drugs with the intent to distribute, so too the jury could infer that he possessed the gun with the intent to further that criminal scheme. We do not find *Stewart* apposite to this case.

We reject defendant's interpretation of *N.J.S.A.* 2C:39–4.1a to require that defendant either be in "actual possession of the weapon (or constructive possession of a weapon in close proximity to defendant) during the commission of the [drug] offense." The statutory language does not suggest that the weapon must be in close proximity to defendant to constitute a violation of *N.J.S.A.* 2C:39–4.1a. Had the statute read "armed with a firearm while in the course of committing" a specified crime, the outcome might be different. See *Merritt, supra,* 247 *N.J.Super.* at 430, 589 *A.*2d at 650 (noting difference between "armed with a weapon" and "in possession of a weapon," and that " 'armed' connotes not only possession but also immediate access to a weapon"). The language "while in the course of committing" does suggest, however, a temporal and spatial link between the possession of the firearm and the drugs that defendant intended to distribute. The evidence must permit the jury to infer that the firearm was accessible for use in the commission of the crime. The inference to be drawn—that the gun was possessed in the course of committing the drug offense—becomes more tenuous the further removed the gun is from the drugs. For example, a person could constructively possess in a New Jersey home drugs that he intends to distribute at the same time he constructively possesses a hunting rifle in a California home. In such a case, without some showing

of a connection between the two, the evidence would not permit a reasonable inference that the person constructively possessed the rifle while in the course of committing a drug offense 3000 miles away. The closer in proximity a firearm is to drugs, the stronger and more natural the inference that the two are related to a common purpose. We cannot limn the multitude of scenarios that would permit the drawing of a reasonable inference that a firearm is possessed while in the course of committing a drug offense. There is no formulaic solution; each case is fact-sensitive. We leave that decision to the sound discretion of our trial courts.

We conclude in this case that the jury could reasonably infer that defendant possessed the loaded firearm stored in his kitchen cabinet with the purpose of protecting himself and the drugs found throughout his apartment. The physical and temporal proximity of the weapon and the drugs permits that inference. The jury also learned from the testimony of Detective William Mannix, an expert in the field of narcotics sales, packaging, and distribution, that drug dealers often are armed with guns for the purpose of protecting themselves, their money, and their drugs from the addicts they service. *Cf.* Report to the Governor by the Attorney General on the Need to Update the Comprehensive Drug Reform Act of 1987 (Dec. 9, 1996) (stating that "[f]irearms have become ubiquitous in the world of illegal drug activity. Dealers are armed to protect themselves from law enforcement officers, from other dealers and from their customers"). Accordingly, we hold the State's proofs were sufficient to withstand defendant's motion for a judgment of acquittal and to sustain his conviction.

### III.

Defendant also challenges the limitations placed on his presentation of evidence of alleged prior police misconduct, the admission of his prior convictions to impeach his credibility, and the excessiveness of his sentence. The Appellate Division found that those arguments lacked sufficient merit to warrant discussion. *Harri-*

*son, supra,* 358 *N.J.Super.* at 581, 818 *A.*2d at 489. We too affirm the trial court's exercise of discretion and offer these comments.

A.

■ Defendant contended that the police planted the drugs and the gun in his apartment in retaliation for a physical altercation he had in 1994 with Plainfield Police Officer Barry Hunter. Officer Hunter had no involvement in the execution of the warrant in the present case. Defendant was given wide latitude in questioning the State's witnesses to expose any police bias arising from the incident with Officer Hunter. The police officers who testified were asked whether they knew of the 1994 incident and whether they knew or worked with Officer Hunter. Defense counsel in summation played loudly the theme of police bias and retaliation.

Defendant did not move to suppress evidence based on any defect in the search warrant or accompanying affidavit or move for disclosure of the identity of the confidential informant mentioned in the affidavit. However, he complains that he was not permitted to cross-examine Detective Zavis, the affiant, on alleged fabrications in the affidavit or on Zavis's contacts with the informant. The trial court foreclosed that questioning because it appeared to be a thinly disguised effort to cause the disclosure of privileged information—the informant's identity. *See N.J.R.E.* 516 (Identity of Informer); *see also State v. Boone,* 125 *N.J.Super.* 112, 113, 309 *A.*2d 1, 2 (App.Div.) (upholding informant's privilege because informant did not participate in crime for which defendant was prosecuted), *certif. denied,* 64 *N.J.* 310, 315 *A.*2d 399 (1973). Defendant made no meaningful proffer concerning the relevance of the excursion on which he sought to take the court. He did not indicate what relevant evidence could be provided to the jury by the informant, who did not participate in the search that uncovered the gun and drugs on which the prosecution was based. Under those circumstances, we discern no abuse of discretion in the court's ruling.

■ Additionally, defendant claims that the trial court erred in barring evidence that Officer Plum had previously assaulted and planted drugs on a defendant in an unrelated case tried several years earlier. Defendant did not contend that Officer Plum— whom he knocked unconscious—assaulted him or personally framed him in this case. In fact, Officer Plum's role in the search was preempted by his detour to the hospital for treatment of his injuries. Defendant wanted to call the allegedly abused defendant in the unrelated case in a naked attempt to introduce impermissible bad character testimony via a single alleged act of prior misconduct. The trial court recognized that defendant's request would require a mini-trial on a collateral issue. Additionally, defendant failed to articulate a justification for the admission of such evidence that, on its face, is prohibited by several rules of evidence. *See, e.g., N.J.R.E.* 608 (Evidence of Character for Truthfulness or Untruthfulness) ("Except as otherwise provided by Rule 609 [Impeachment by Evidence of Conviction of Crime], a trait of character cannot be proved by specific instances of conduct."); *N.J.R.E.* 405(a) (Specific Instances of Conduct) ("Specific instances of conduct not the subject of a conviction of a crime shall be inadmissible."); *N.J.R.E.* 404(b) (Other Crimes, Wrongs, or Acts) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith."). Defendant never explained to the trial court how his inquiry would comply with those rules. Moreover, the court barred the evidence because of its collateral nature and because any probative value it possessed was substantially outweighed by undue risk of prejudice and consumption of time. *N.J.R.E.* 403. We do not find any abuse of discretion by the trial court.

## B.

■ Defendant contends that the trial court abused its discretion by allowing the introduction of three prior criminal convictions to impeach his credibility. Defendant was convicted in 1991

of possession with intent to distribute drugs in one indictment and distribution of drugs in another indictment. He also was convicted in 1992 of possession with intent to distribute drugs. The trial of this case occurred six years from the date of defendant's last conviction and only two years from his discharge from probation. The trial court ruled the convictions admissible to attack defendant's credibility in the event he chose to testify, which he did. Although the jury learned that defendant was convicted of three prior crimes, it was not advised that those convictions were for drug offenses. See *State v. Brunson*, 132 *N.J.* 377, 391, 625 *A.*2d 1085, 1092 (1993) (limiting evidence of testifying defendant's prior convictions that are similar or same to offense charged to degree of crime and date of commission, without reference to nature of crime). The jury only was told the degree of the offenses, the dates of convictions, and the sentences imposed.

 The trial court acted well within its discretion by permitting impeachment by prior conviction. *See N.J.R.E.* 609. In *State v. Sands*, we stated that:

> [a] trial judge shall admit evidence of criminal convictions to affect credibility of a criminal defendant unless in his discretion he finds that its probative force because of its remoteness, giving due consideration to relevant circumstances such as the nature of the crime, and intervening incarcerations and convictions, is substantially outweighed so that its admission will create undue prejudice.
>
> [76 *N.J.* 127, 147, 386 *A.*2d 378, 388 (1978).]

"Ordinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant." *Id.* at 144, 386 A.2d at 387.

Defendant did not meet that burden. The lapse in time between his prior convictions and his current crime did not exceed the permissible threshold for admissibility. *Cf. id.* at 146, 386 A.2d at 387–88 (admitting numerous convictions occurring between 1950 and 1971 in trial for incident occurring in 1973); *State v. Morris*, 242 *N.J.Super.* 532, 544–45, 577 *A.*2d 852, 859–60 (App. Div.) (admitting ten-year-old murder convictions), *certif. denied*, 122 *N.J.* 408, 585 *A.*2d 405 (1990); *State v. Harkins*, 177 *N.J.Super.* 397, 400–01, 403, 426 *A.*2d 1053, 1054–56 (App.Div.1981)

(admitting thirteen-year-old conviction for assault with intent to rob and ten-year-old convictions for breaking and entering and malicious damage to property). The trial court did not commit error by admitting defendant's prior convictions.

## C.

Finally, defendant claims that the trial court abused its discretion in running three sentences consecutive to one another. We disagree. The trial court was required by statute to run the eighteen-year extended term with a nine-year parole disqualifier for possession of CDS with intent to distribute within 500 feet of a public park (count three) *consecutive* to the nine-year term with four-year parole disqualifier for possession of a firearm while committing a drug offense (count seven). *See N.J.S.A.* 39–4.1d (requiring sentence for *N.J.S.A.* 2C:39–4.1a violation to run consecutive to sentences for *N.J.S.A.* 2C:35–7.1 violations). Defendant argues, however, that the trial court violated our *Yarbough* guidelines by running his five-year term with a two-year parole disqualifier for the aggravated assault on Officer Plum (count nine) *consecutive* to his sentences on counts three and seven.[4] He claims his aggravated assault on Officer Plum, a member of the search team, was so interrelated to the charges arising from the discovery of the gun and drugs that it constituted "a single period of aberrant behavior." *Yarbough, supra,* 100 *N.J.* at 644, 498 *A.*2d at 1248.

---

[4] In *State v. Yarbough,* the Court articulated the following five factors to guide a trial court in determining whether to impose consecutive or concurrent sentences: (1) whether "the crimes and their objectives were predominately independent of each other"; (2) whether they "involved separate acts of violence or threats of violence"; (3) whether they "were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior"; (4) whether they "involved multiple victims"; and (5) whether "the convictions for which the sentences are to be imposed are numerous." 100 *N.J.* 627, 643–44, 498 *A.*2d 1239, 1247–48 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986).

The trial court in this case succinctly explained its reasons for imposing a consecutive sentence: "Separate crime, separate victim, separate incident of assault." The aggravated assault on Officer Plum was an independent act of violence, separable from defendant's weapon and drug offenses. *Yarbough* reminds us that there are no free crimes. *Id.* at 643, 498 *A.2d* at 1247. The aggregate sentence of thirty-two years with a fifteen-year parole disqualifier is harsh, but follows from our sentencing scheme. On appellate review, we do not substitute our judgment for that of the trial court unless the sentence is so wide of the mark as to require our intervention. *See State v. Carey,* 168 *N.J.* 413, 430–31, 775 *A.2d* 495, 505–06 (2001) (applying abuse of discretion standard to review trial court's decision to impose consecutive sentences, and finding that sentence was not " 'so wide of the mark as to require its modification by this Court' ") (quoting *State v. Peace,* 63 *N.J.* 127, 129, 305 *A.2d* 410, 412 (1973)). The court heard all the witnesses, including the assault victim and defendant, and was familiar with defendant's lengthy juvenile and adult criminal history. We cannot conclude that the trial court abused its discretion by imposing consecutive sentences.

## IV.

For the reasons stated within, we affirm the judgment of the Appellate Division.

*For affirming*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—5.

*Opposed*—None.