**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0678-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANGIE WALLACE,

     Defendant-Appellant.

_____

> Argued May 11, 2022 – Decided July 15, 2022
>
> Before Judges Gilson, Gooden Brown and Gummer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-11-1721.
>
> Emily A. Vance, admitted pursuant to Rule 1:21-3(c), argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Perrone, First Assistant Deputy Public Defender, of counsel and on the briefs; Harris Fischman and Justin D. Ward, admitted pursuant to Rule 1:21-3(c), on the briefs).
>
> Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting

Attorney General, attorney; Deborah Bartolomey, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Angie Wallace of third-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2(a)(1) and 2C:18-2(a)(1); and third-degree theft, N.J.S.A. 2C:20-3(a). The convictions all arose out of a burglary at a convenience store. Defendant appeals, arguing, among other things, that there was insufficient evidence to convict her because there was no evidence linking her to the break-in or theft. Having reviewed the record, we agree and reverse her convictions.

I.

We summarize the facts from the evidence presented at trial. In the early morning hours of April 12, 2016, two individuals broke into a mini-mart store at a gas station in Edison (the Mini-mart). The Mini-mart was closed but had video surveillance cameras that recorded the break-in. The video footage showed an object thrown against the glass front door, the glass shattered, and a man and woman were then seen entering the Mini-mart. The man stepped directly in front of the camera, took several rolls of lottery tickets, and handed them to the woman who was near the doorway. The man then grabbed other items from behind the counter before exiting the Mini-mart. Video from another

2

camera outside the Mini-mart showed two individuals walking towards the Mini-mart and, shortly thereafter, walking away.

The Mini-mart had an alarm system, and the police and store owner were notified. When the police responded, the intruders were gone, but the police observed a ransacked store. The owner also came to the Mini-mart and, after surveying the scene, reported that lottery tickets and cigarettes had been stolen. The owner estimated that the lottery tickets were worth approximately $7,000.

During the ensuing investigation, the police collected the serial numbers of the stolen lottery tickets and sent a subpoena to the Lottery Commission to obtain information about locations where someone may have attempted to cash the stolen lottery tickets. Based on information from the Lottery Commission, the police learned that on April 12, 2016, hours after the break-in, some of the lottery tickets had been presented at three local stores: Vilma Deli, Rahway Discount Liquors, and Bravo gas station.

Thereafter, Detective Nicholas Puccio, who was involved in the burglary investigation, visited those stores. At Vilma Deli, Puccio spoke with the owner who reported a man had tried to cash several lottery tickets on April 12, 2016. The deli had security cameras that had recorded the owner's interaction with the man. Puccio reviewed the video footage but could not download the footage.

A-0678-19

Puccio, therefore, took photographs of some of the images on the video footage, including a photograph of the man.

When Puccio visited Rahway Discount Liquors, he met with the manager, who reported that a woman had attempted to cash a lottery ticket on April 12, 2016. The manager later testified that when the woman attempted to cash a lottery ticket, he refused to cash it because of an alert requiring that the ticket be submitted to the Lottery Commission, and the woman left the store. That interaction was captured on the store's video surveillance system. Puccio could not download that video, but he took photographs of images from the video footage, including several photographs of a woman and of a vehicle in the store's parking lot.

At the Bravo gas station Puccio met with a worker and reviewed store security video footage of someone attempting to cash lottery tickets on April 12, 2016. Again, the video was not preserved, but a photograph was taken of a woman who appeared on the footage. Puccio later testified at trial that no tickets cashed at Bravo were identified as missing or stolen.

On April 21, 2016, Puccio prepared a summary of information concerning what the police had learned about the burglary. That information included photographs of the man at the Mini-mart and a woman at an unidentified

4

location. The summary also included a description of a dark color, older-model Jeep that had been observed in video footage from one of the convenience stores. The summary was then sent to police agencies throughout New Jersey.

In response, Puccio learned that a Jeep, matching the description of the vehicle in his summary, had been stopped for speeding on April 21, 2016. The police were then able to obtain the license plate number of the vehicle and learned that co-defendant Charles Johnson was the registered owner. The police also obtained Johnson's address and a picture of Johnson from the Motor Vehicle Commission (MVC). In addition, the police learned that defendant spent time with Johnson and, therefore, also obtained her address and her MVC photograph.

Thereafter, the police surveilled defendant's and Johnson's homes. During the surveillances, police observed Johnson driving a brown 1989 Jeep Cherokee. They also observed the Jeep parked outside defendant's home on several occasions at different times of day. Defendant was also seen riding in the Jeep as a passenger.

On May 5, 2016, Johnson was arrested, and his Jeep was impounded. The police obtained a warrant to search the Jeep and found ten lottery tickets that police later confirmed matched some of the tickets reported as stolen from the Mini-mart.

A-0678-19

Defendant and Johnson were charged with various crimes related to the burglary.[1] They were tried together. At trial, the jury heard testimony from fourteen witnesses. Neither defendant nor co-defendant Johnson testified at trial. The State submitted numerous exhibits, including recordings of the videos from the Mini-mart, a photograph of the man who appeared on the Mini-mart video, photographs of people and vehicles taken from the surveillance footage from the Rahway Discount Liquors and Bravo Gas stores, MVC photographs of defendant and Johnson, and a report concerning the stolen lottery tickets prepared by an employee of the Lottery Commission.

The police officer who had stopped Johnson's Jeep for speeding testified at trial. He explained that there was a woman in the Jeep with Johnson, and he had obtained her name but could not recall it during trial.

An employee of the Lottery Commission testified that she had created a report concerning lottery tickets in response to the police's subpoena, some of which were entered into the Commission's system as missing or stolen. She explained that she had retrieved information from the Commission's internal

---

[1] Johnson also filed an appeal, which we address in a separate unpublished opinion. See State v. Johnson, Docket No. A-0680-19.

database on the tickets requested in the subpoena, including a list of times and locations where the lottery tickets had been scanned.

At trial, defendant objected to the admission of the photographs from the surveillance footage and the report from the Lottery Commission. The trial court overruled those objections and admitted the photographs and report into evidence. The trial judge initially excluded, under N.J.R.E. 403, the photograph of a woman taken from the Bravo video but later admitted it on the grounds that defense counsel had "opened the door" while cross-examining Detective Puccio. Thereafter, defendant requested an adverse-inference instruction concerning Puccio's failure to preserve the surveillance videos from the stores he had visited. The trial court denied that request.

At the close of the State's case, defendant moved for a judgment of acquittal, but the trial judge denied the motion. The jury found defendant guilty of burglary, conspiracy to commit burglary, and theft. Her motions for a judgment of acquittal notwithstanding the verdict and for a new trial were denied. She now appeals from her convictions.

II.

On appeal, defendant makes four arguments:

> POINT I – THE IDENTIFICATION EVIDENCE AGAINST [DEFENDANT] WAS INSUFFICIENT.

7

A. The Identification Evidence Against [Defendant:]

    1. Burglary Videos[;]

    2. Still Photographs from Rahway Discount Liquors and Bravo Gas[; and]

    3. Alleged Relationship with Mr. Johnson.

B. Taken Together, the Identification Evidence Was Insufficient.

POINT II – THE PHOTOGRAPHS FROM RAHWAY DISCOUNT LIQUORS AND BRAVO GAS, AND THE RECORDS FROM THE DIVISION OF LOTTERY, WERE IMPROPERLY ADMITTED.

A. "Opening the Door" and Undue Prejudice.

B. Improper Authentication.

C. Business-Record Exception.

POINT III – THE COURT ERRED IN DENYING AN ADVERSE-INFERENCE INSTRUCTION.

POINT IV – [DEFENDANT] WAS IMPROPERLY DENIED ADMISSION INTO THE PRETRIAL INTERVENTION PROGRAM.

Having reviewed the evidence presented at trial, we conclude that there was insufficient evidence to identify defendant as one of the persons who broke

8

into and took items from the Mini-mart. Accordingly, we reverse her convictions and vacate her judgment of conviction.

At the close of the State's case, defendant moved for a judgment of acquittal. Accordingly, we apply the standard for considering motions for a judgment of acquittal in evaluating defendant's arguments about the sufficiency of the evidence against her.

A court should enter an order for a judgment of acquittal only "if the evidence is insufficient to warrant a conviction." State v. Brown, 463 N.J. Super. 33, 47 (App. Div. 2020) (quoting R. 3:18-1). The standard to determine a motion for a judgment of acquittal is well-established:

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

When considering a motion of acquittal under Rule 3:18-1, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Papasavvas, 170 N.J. 462, 521 (2002) (quoting State v. Kluber, 130 N.J.

Super. 336, 342 (App. Div. 1974)). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004). When reviewing a motion for a judgment of acquittal, an appellate court uses a de novo standard of review and applies the same standard used by a trial court. State v. Williams, 218 N.J. 576, 593-94 (2014); State v. Kittrell, 145 N.J. 112, 130 (1996).

The critical factual issue on all three charges against defendant was her identification as the woman who had accompanied a man while breaking into and stealing lottery tickets and cigarettes from the Mini-mart on April 12, 2016. To convict defendant on the charges of burglary or theft, the State needed to prove beyond a reasonable doubt that defendant was the woman who had broken into and had taken items from the Mini-mart. See N.J.S.A. 2C:18-2(a)(1) (requiring that a person guilty of burglary enter a structure "with purpose to commit an offense therein"); N.J.S.A. 2C:20-3(a) (stating a person is guilty of theft if he or she "unlawfully takes, or exercises unlawful control over" another person's property "with purpose to deprive [] thereof"). To convict defendant of a conspiracy to commit burglary, the State needed to present evidence that defendant had conspired with the man who had broken into the Mini-mart. See N.J.S.A. 2C:5-2(a)(1) (stating a person is guilty of conspiracy to commit a crime

if "with the purpose of promoting or facilitating its commission," he or she agrees with another person to "engage in conduct which constitutes such crime"); N.J.S.A. 2C:18-2(a)(1) (requiring that a person guilty of burglary enter a structure "with purpose to commit an offense therein").

No witness identified defendant as the woman who had broken into the Mini-mart. Indeed, the trial judge granted motions precluding any attempt to offer evidence of an out-of-court identification of defendant or an in-court identification of defendant.

No physical evidence linked defendant to the burglary. Defendant's fingerprints were not found in the Mini-mart. No physical evidence connected defendant to the break-in.

Defendant was also not found to be in possession of any of the stolen lottery tickets or cigarettes. Furthermore, there was no evidence concerning a conspiracy between defendant and co-defendant Johnson.

The State's evidence against defendant consisted of (1) the video from the Mini-mart; (2) photographs from Rahway Liquors and Bravo Gas; (3) testimony from a police officer that a woman had been with co-defendant Johnson when the police officer had stopped Johnson for speeding; and (4) testimony concerning surveillance conducted by the police during which Johnson's Jeep

had been seen parked outside defendant's home and defendant had been seen riding in the Jeep as a passenger.

At trial, no one argued that the woman depicted in the video footage was shown clearly enough to be identified. Instead, the only evidence the State offered concerning defendant's identification were photographs of a woman at the Rahway Liquor Store and the Bravo gas station at the times when someone attempted to cash lottery tickets. Those photographs, however, were blurry and not clear enough to allow a viewer to identify the woman depicted in the photographs.

The State argues that the woman in the photographs from the Rahway Liquor Store and the Bravo gas station is the same woman as pictured in the MVC photograph of defendant. Even giving the State all reasonable inferences, a fair and objective analysis of the photographs would not permit a reasonable jury to find beyond a reasonable doubt that the photographs depict the same person.

The officer who had stopped Johnson's Jeep for speeding candidly acknowledged that he did not recall the name of the woman who was with Johnson. Consequently, the police officer did not identify defendant as the woman with Johnson.

12

Finally, seeing Johnson's Jeep outside of defendant's home or defendant in the Jeep with Johnson would allow a jury to reasonably conclude that the defendant and Johnson spent time together. To assume that because Wallace spent time with Johnson, she was with him when he broke into the Mini-mart, would be speculation. Merely associating defendant with Johnson after he was seen breaking into a store with a woman is insufficient evidence to establish beyond a reasonable doubt that defendant was the woman with Johnson at the Mini-mart.

In short, evaluating the State's evidence in its entirety and giving the State the benefit of all reasonable inferences, there was insufficient evidence to convict defendant of burglary, conspiracy to commit burglary, or theft. We, therefore, reverse her convictions and vacate her judgment of conviction. Given that ruling, we need not reach defendant's other arguments.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-0678-19