**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3984-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOMO K. LYLESBELTON,
a/k/a JOMO K. LYLESBELRON,
JOMO K. LYLES-BELTON,
JOMO K. LYLES-BELRON,
JOMO BELRON,
JOMO BELTRON,
JOMO LYLES, and
JOMO LYLESBENTON,

     Defendant-Appellant.

_____

        Argued April 1, 2025 – Decided April 14, 2025

        Before Judges Gilson, Firko, and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 20-01-0092.

        Ethan Kisch, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Ethan Kisch, of counsel and on the brief).

Amanda G. Schwartz, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Amanda G. Schwartz, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Jomo K. Lylesbelton was convicted of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5-(a)(1) and (b)(2) (count two); and second-degree possession of a firearm during a CDS offense, N.J.S.A. 2C:39-4.1(a) (count three). These convictions arose from the search of defendant's home while law enforcement executed a search warrant and uncovered seventeen grams of cocaine, scales, baggies, and a handgun in his bedroom.

On July 28, 2023, after merging count one into count two, the court sentenced defendant to three years' imprisonment on count two. On count three, the conviction for possession of a firearm during a CDS offense, the court sentenced defendant to five years' imprisonment with forty-two months of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6, to run consecutively to the three-year term of imprisonment. Defendant appeals from his convictions and sentence. We affirm.

I.

We draw the facts from the trial record. In August 2017, the New Jersey State Police (NJSP) were investigating defendant for drug distribution. Detective Sergeant Mark DiValerio was the lead detective on the case. On August 10, 2017, DiValerio and "multiple" law enforcement officers from the Atlantic City Metro Task Force executed a search warrant at defendant's residence in Atlantic City. DiValerio testified that every detective "was responsible for different duties," such as searching the residence, taking photographs, ensuring defendant's safety, and making sure no one was entering or exiting the residence. DiValerio explained that defendant's bedroom was identified based on "several articles of clothing" that he had worn during a previous surveillance and his checkbook.

DiValerio testified that "[a]lso located in the bedroom were bags of cocaine, digital scales, packaging material, specifically plastic baggies, and a handgun." He added that "[t]he drugs were located at the foot of the bed" inside a plastic bottle on a bookshelf. Once the drugs were located, DiValerio explained they were removed from the bottle, placed in NJSP evidence bags, sealed, and labeled with the case number, date, and his badge number. The evidence bags were transported to the police station for processing and later

testing at the State Police Lab. The drugs were tested and determined to be cocaine. DiValerio also testified that three digital scales were found on the same bookshelf, and he himself found a 9-millimeter handgun in the top dresser drawer. Defendant was arrested that day.

On May 1, 2023, two days before the trial commenced, defendant moved to bar Sergeant Michael Gonzalez from testifying as an expert witness in the field of narcotics on behalf of the State. The court denied the motion.

At trial, DiValerio testified on behalf of the State about the search of defendant's bedroom and exhibit S-2, the bags of cocaine, located within the plastic bottle:

> [State]: I'm showing the detective what's been pre-marked as S-2 for identification purposes. Do you recognize that?
>
> . . . .
>
> [DiValerio]: Yes, I do.
>
> [State]: And what is it?
>
> [DiValerio]: These are bags of cocaine that were located within that plastic bottle that was up on the screen.
>
> . . . .
>
> These are also additional bags of cocaine that were located in the same bottle.

4

[The Court]:  Is that also S-2?

. . . .

[State]:  S-2, yes.

. . . .

[State]:  And how do you know that this is the same suspected cocaine that was recovered from the search?

[DiValerio]:  Once we identified it in the bottle, it was removed from the bottle.  Again, it was placed in the [NJSP] evidence bags.  They were sealed properly, and they were labeled with the case number, the date, my badge number, and then, they were taken back to the station for processing.

[State]:  So, it—does it have your name on it?

[DiValerio]:  It does have my name and badge number on it, yes.

After this exchange, defendant's counsel challenged the foundation of exhibit S-2 and asked for a sidebar.  Defense counsel questioned whether DiValerio had been the person who found the cocaine on the basis he used the phrase "was located" during his testimony.  Following the sidebar, the State asked DiValerio, "were you the one who actually located the cocaine?"  DiValerio responded, "I was not the one who actually located the cocaine."

Defense counsel asked for another sidebar.  Accordingly, the court and counsel engaged in the following colloquy:

[Defense counsel]: Judge, I have an objection to anything that he would say at this point on, because he was not the one that actually took custody of the cocaine inside the residence.

[State]: It's a search warrant, [j]udge. . . . every single person who was there doing a search warrant testified. He was there. He was the case detective. He was present for it. He saw what was found, the package, it's his name on it, this packaging. . . .

[The Court]: At this point in time, [the court is] going to have to sustain the objection, but you can ask follow-up questions to determine, well, what his activities were there, and whether or not—how he knows this . . . .

. . . .

But he can testify as to his observations—

. . . .

The State resumed questioning and elicited the following testimony from DiValerio:

[State]: Detective, were you present in the room during the search of that particular room?

[DiValerio]: I was present, yes.

[State]: And did you observe this cocaine—you testified you weren't the one who unscrewed the bottle, but—
[DiValerio]: No.

[State]: . . . did you observe one of your . . . .

6

[DiValerio]: One of my squad-mates, members of my unit. Yes.

[State]: So, you actually saw the—when it was happening?

[DiValerio]: Yes.

DiValerio stated the pink plastic baggies found during the search were "consistent with packaging for distribution of narcotics." Regarding the three digital scales, DiValerio testified that based on his training and experience, those scales "are typically used to weigh a specific quantity of narcotics for distribution" and were found on the "same shelving unit as the bottle." DiValerio also testified that he found a 9-millimeter handgun[1] in the top drawer of defendant's dresser. DiValerio described defendant's bedroom as very small, measuring approximately twelve feet by twelve feet.

On cross-examination, DiValerio testified he did not personally "touch" the bottle seized and did not observe anyone grab or open the bottle but "somebody would have showed it" to him and alerted him "right then and there" to secure the evidence. Defense counsel renewed the objection to DiValerio's testimony contending the State failed to establish "drug custody." The court

---

[1] The parties stipulated that the handgun was lawfully registered to defendant and ballistics testing confirmed the handgun was operable.

A-3984-22

overruled the objection and noted DiValerio's testimony was "inconsistent" as to what he observed and what was in the room. However, the court found a sufficient foundation was established to admit S-2 into evidence because DiValerio was responsible for securing the evidence and obtained it from the officers who were searching the room under his supervision. The court determined there was "sufficient validation" to admit the bottles containing the cocaine into evidence—S-2—noting any inconsistencies in DiValerio's statements were fact questions for the jury to decide, and no testimony "nullifie[d] the foundation."

On re-direct examination, DiValerio described S-2 for the jury as follows:

> [State]: I'm going to show you what's been admitted into evidence as S-2. So, are those the drugs that were recovered . . . correct?
>
> [DiValerio]: That is correct. Yes.
>
> [State]: And so, there is this bag, correct? And can you describe it, please?
>
> [DiValerio]: This is a clear plastic bag—it's clear—two clear plastic baggies. They have a white powder rock substance, cocaine.
>
> [State]: . . . I'm showing you what's also been admitted as S-2. Are those—were those items also recovered from the same location?

[DiValerio]: Yes, this was also found within the plastic bottle. Same location.

[State]: And what about this? It's another S-2 as well.

[DiValerio]: This was also found with all the rest of the cocaine in a plastic bottle.

[State]: And how many little bags are here. Can you tell?

[DiValerio]: It looks like two.

[State]: And what about here?

[DiValerio]: It looks like one in this one, and I can't tell if that's one or two in there.

While DiValerio was counting the bags of cocaine on the witness stand, defense counsel objected, and the court conducted a sidebar with counsel. At sidebar, it was determined that two additional bags of cocaine, which were not recovered from defendant's bedroom during the search but came from two prepackaged bags from controlled buys, had accidentally been added to exhibit S-2. The State agreed with defense counsel that the evidence of the additional baggies should be stricken from the record. The court then struck the subject testimony and promptly gave the jury an instruction:

> Jury, [the court is] striking all of the testimony relative to those . . . counting of those bags, . . . [DiValerio] just testified to, as well as any testimony related to those items that were distributed from S-2 and given to

9

[DiValerio]. You are to disregard that. You may not consider that in any of your deliberations.

The next day, outside the presence of the jury, defendant moved for a mistrial with prejudice based on the additional cocaine bags that were inadvertently added to S-2. Defense counsel argued that defendant was prejudiced because DiValerio testified there were "multiple small bags of CDS packaged for distribution located in defendant's bedroom", and the jury observed DiValerio count the bags on the witness stand. The State countered a "strong curative instruction" could remedy any potential prejudice and that adding an instruction to the jury charge would "really cure the prejudice." The court denied defendant's motion for a mistrial finding a curative instruction would ensure defendant's right to a fair trial. Before DiValerio was recalled to the stand, the court provided the following curative instruction to the jury:

> So, you may recall when we broke yesterday that . . . DiValerio was testifying, and what [the court] asked you to disregard certain testimony at the end of the day. [The court is] going to read you an instruction. Members of the jury, it came to the [c]ourt's attention yesterday that while the State's witness, . . . DiValerio, was testifying, that he misidentified several items which had been packaged inside of State's Exhibit [S]-2. . . . [W]hat he misidentified were bags of suspected cocaine that were packaged. They are not relevant to this case, and it was testified to in error. In this regard, the State mishandled the items which this witness stated were packages containing cocaine, and stated that same

10

were seized pursuant to a search of . . . [d]efendant's bedroom.  They were not.

[The court is] instructing you in the strongest way possible that each of you shall disregard any testimony you heard on—about those exhibits you observed in [c]ourt yesterday.  You are not to consider whether—what the State produced to be relevant to this matter, and [are] not to consider what the State produced as packaged cocaine.  You shall disregard it.  It was the State [which] made a mistake of placing them in the same bag with other evidence in S-2, which other evidence in S-2 is relevant to this matter.

You are the judges of the facts.  As with all witnesses, you may accept their testimony, reject their testimony, or accept or reject part of their testimony.  As with all witnesses, you may evaluate their credibility, taking into account the factors [the court] provided to you in my preliminary instructions.  Are each of you able to scrupulously follow this instruction?

Each juror indicated he or she would follow the court's instruction.

The State next called Briana Senger, a forensic scientist with the NJSP, to testify.  Senger conducted a chemical analysis of the cocaine recovered from defendant's bedroom and concluded it weighed 17.578 grams, which is over one-half an ounce.  Senger also testified that she performed other confirmatory tests and based on the results of the tests, she concluded that the two bags contained cocaine.

11

An N.J.R.E 104 hearing was conducted to determine whether Sergeant Gonzalez from the New Jersey Division of Criminal Justice was qualified to testify as an expert in the field of narcotics on behalf of the State. The court determined Gonzalez was qualified and allowed him to testify in this area of expertise. Gonzalez testified that based on his training and experience, possession of one-half an ounce of cocaine is "generally indicative" of drug distribution. During his undercover work, Gonzalez testified he never purchased less than ten grams of cocaine.

Defendant then moved for a directed verdict based on DiValerio's testimony that he was not the initial officer who found the cocaine. Defendant argued his Sixth Amendment right to confrontation was violated because the State failed to identify the officer who actually discovered the cocaine, and therefore, the State failed to establish custody of the evidence. The court denied the motion for a directed verdict finding the State offered "sufficient evidence" on this issue. The court also determined that any discrepancies in DiValerio's direct and cross-examination testimony, and whether or not he observed the cocaine found by another officer, were issues of fact and credibility for the jury to determine. Defendant did not testify and did not call any witnesses.

In charging the jury at the close of summations, the court instructed the following:

> You may recall, it came to the [c]ourt's attention that while the State's witness, . . . DiValerio, was testifying that he mis-identified several items which had been packaged inside of State's Exhibit-2—[S-]2. What he mis-identified, the bags of suspected cocaine that were packaged, are not relevant to this case and was testified to in error. In this regard, the State mis-handled the items which the witness stated were packages containing cocaine and stated that same were seized pursuant to a search of the defendant's bedroom. They were not. [The court is] instructing you, in the strongest way possible, that each of you shall disregard any testimony you heard and those exhibits you observed in [c]ourt.
>
> . . . You are not to consider what the State produced to be relevant to this matter and not to consider what the State produced as packaged cocaine. You shall disregard it. It was the State who made a mistake in placing them in the same bag with other evidence in S-2, which other evidence is relevant to this matter.
>
> You are the judges of the facts. As with all witnesses, you may accept their testimony, reject their testimony, or accept or reject part of their testimony. As with all witnesses, you may evaluate their credibility, taking into account the factors [the court] provided to you in my preliminary instructions and in these instructions.

The court gave the Model Jury Charge (Criminal) on Possession of Firearm While Committing Certain Drug Crimes, N.J.S.A. 2C:39-4.1(a), with minor modifications not challenged on appeal.

The jury found defendant guilty of all three charges. Prior to sentencing, defendant moved for a new trial, arguing the erroneous admission of the controlled-buy evidence before the jury violated his right to confrontation. The court denied that motion and held DiValerio provided an adequate foundation to admit S-2 into evidence. As the lead detective on the case, he was present when the cocaine was found, and he secured it in the evidence bag. The court highlighted it "did not understate the severity of the State's mistake and provided multiple curative instructions," which "addressed and overcame any prejudice to defendant" from the "inadvertent publication of the additional bags of cocaine."

Now on appeal, defendant raises the following points:

> POINT I
>
> REVERSAL IS REQUIRED BECAUSE THE . . . COURT PERMITTED THE STATE'S KEY WITNESS TO TESTIFY BASED ALMOST ENTIRELY ON HEARSAY AND ADMITTED PHYSICAL EVIDENCE WITHOUT A PROPER FOUNDATION. U.S. CONST. AMENDS. V, VI, [AND] XIV; N.J. CONST. ART. 1, ¶¶ 1 [AND] 10.

POINT II

REVERSAL IS REQUIRED BECAUSE THE . . . COURT DID NOT ORDER A MISTRIAL AFTER THE STATE AND ITS KEY WITNESS DISPLAYED TO THE JURY PREJUDICIAL PHYSICAL EVIDENCE RELATED TO UNCHARGED CONDUCT. U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. ART. 1, ¶¶ 1, 9, 10.

POINT III

[DEFENDANT'S] CONVICTION UNDER N.J.S.A. 2C:39-4.1(A) MUST BE REVERSED BECAUSE THE . . . COURT PROVIDED JURY INSTRUCTIONS INCONSISTENT WITH BINDING PRECEDENT. N.J. CONST. ART. 1, ¶¶ 1, 9, 10. (Not Raised Below)

POINT IV

THE . . . COURT'S SWEEPING INTERPRETATION OF N.J.S.A. 2C:39-4.1(A), AS APPLIED TO [DEFENDANT], VIOLATED HIS SECOND AMENDMENT RIGHTS. U.S. CONST. AMENDS. II, XIV; N.J. CONST. ART. 1, ¶¶ 1, 9, 10. (Not Raised Below)

A.  The Second Amendment Presumptively Protects The Right To Possess A Handgun.

B.  The State Cannot Meet Its Heavy Burden To Prove That The . . . Court's Sweeping Interpretation Of [N.J.S.A. 2C:39-]4.1(A), As Applied To [Defendant] In This Case, Is Consistent With The Nation's Historical Tradition Of Firearm Regulation.

15

II.

We afford substantial deference to a trial court's evidentiary rulings. Hrymoc v. Ethicon, Inc., 254 N.J. 446, 463 (2023). As a result, we review evidentiary rulings for an abuse of discretion. Ibid. The trial court's evidentiary rulings must be upheld, "unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" State v. Cotto, 471 N.J. Super. 489, 531 (App. Div. 2022) (quoting State v. Kuropchak, 221 N.J. 368, 385-86 (2015)).

"The grant of a mistrial is an extraordinary remedy . . . ." State v. Yough, 208 N.J. 385, 397 (2011). Motions for mistrial are "addressed to the sound discretion of the [trial] court; and the denial of the motion is reviewable only for an abuse of discretion." State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (quoting State v. Winter, 96 N.J. 640, 647 (1984)). Therefore, this court will not disturb the trial court's decision absent a "manifest injustice." State v. Smith, 224 N.J. 36, 47 (2016).

A.

Defendant argues that the court abused its discretion in allowing DiValerio to testify because he did not find the cocaine, scales, or baggies in defendant's bedroom and only found the handgun. Defendant contends the

16

officers who found the cocaine and paraphernalia did not testify and DiValerio simply "repeated" what the other officers told him about where the cocaine and paraphernalia were found. Because DiValerio lacked first-hand personal knowledge, defendant maintains DiValerio's testimony lacked a proper foundation, was impermissible hearsay in violation of the Confrontation Clause, and should have been excluded.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." N.J.R.E. 901; see also State v. Brunson, 132 N.J. 377, 393-94 (1993). "The determination of whether the State sufficiently established the chain of custody is within the discretion of the trial court." State v. Mosner, 407 N.J. Super. 40, 62 (App. Div. 2009). Such evidence will usually be admitted "if the court finds in reasonable probability that the evidence has not been changed in important respects or is in substantially the same condition as when the crime was committed." Ibid. (internal quotation marks omitted). Defects in the chain do not negate admissibility but go instead to the weight of the evidence. State v. Morton, 155 N.J. 383, 446 (1998); Mosner, 407 N.J. Super. at 62.

A-3984-22

Moreover, "[w]hether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge, and his [or her] determination will not be overturned in the absence of a clearly mistaken exercise thereof." Morton, 155 N.J. at 446 (quoting State v. Brown, 99 N.J. Super. 22, 27 (App. Div. 1968)).

Here, DiValerio was the evidence custodian for the seized cocaine until the time of trial. When the seized cocaine was introduced at trial, DiValerio repeatedly testified that he recognized the NJSP evidence bags as they were labeled with the case number, the date, and his badge number. Thus, there was a reasonable probability that the evidence was not altered and was in the same condition as when it was obtained by the officers. Mosner, 407 N.J. Super. at 62. We are satisfied there was no abuse of discretion in the court's determination that the State provided sufficient evidence to establish the requisite chain of custody. The court found DiValerio was in the bedroom, "saw it," and "observed everything." An examination of the record convinces us that there was no mistaken exercise of discretion here.

Pursuant to N.J.R.E. 602:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need

18

not, consist of the witness' own testimony. This rule does not apply to expert testimony under [N.J.R.E.] 703.

Satisfying the personal knowledge requirement is not an arduous task. So long as the party calling the witness presents a foundation from which the court can conclude that the witness's testimony is based on his or her own observations and experience, and not on information someone else told him or her, the requirement will be satisfied. See Phillips v. Gelpke, 190 N.J. 580, 589 (2007) ("In respect of lay testimony, the foundation for its admission is simply the witness's personal knowledge."); Neno v. Clinton, 167 N.J. 573, 584-85 (2001) (explaining that a witness may not rely on information that someone else told him or her, but rather, must rely on personal observations).

> Once a lay witness's testimony, based on personal knowledge, is admitted, "[t]he extent to which [the] testimony [is] to be believed [is] for the jury." State v. Carter, 91 N.J. 86, 124 (1982). Under the present Rules of Evidence, "questions concerning the [witness's] recall are . . . relevant only insofar as they bear upon the weight which the factfinder places upon testimony that has in fact been given." In re R.R., 79 N.J. 97, 116 (1979) (commenting on abandonment of former evidential requirement that witness must demonstrate certain powers of observation and recollection).
>
> [Phillips, 190 N.J. at 590.]

In the matter under review, the court determined that DiValerio's testimony established personal knowledge of the evidence because he was in defendant's bedroom at the time the cocaine was found and would have seen the cocaine another officer found. DiValerio's testimony supports those findings. As we noted in Brown, "[g]enerally it is sufficient if the court finds in reasonable probability that the evidence has not been changed in important respects . . . or is in substantially the same condition as when the crime was committed." 99 N.J. Super. at 27-28. We are satisfied that the court did not abuse its discretion allowing DiValerio's testimony.

## B.

Next, defendant argues the admission of the evidence through DiValerio violated the Confrontation Clause and constituted inadmissible hearsay under N.J.R.E. 802. Again, we disagree.

In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court held "the admission of an out-of-court 'testimonial' statement permitted by state hearsay rules" unconstitutional "unless the person who made the statement is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine that person." State ex rel. J.A., 195 N.J. 324, 328 (2008). Nonetheless, the Sixth Amendment's confrontation clause does not

A-3984-22

require that "every analyst involved in a testing process . . . testify in order to satisfy confrontation rights." State v. Roach, 219 N.J. 58, 77 (2014).

Further, the United States Supreme Court has stated,

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," . . . this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation . . . from United States v. Lott, 854 F.2d 244, 250 (7th Cir. 1988), "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility."
>
> [Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009).]

Citing State v. Branch, defendant contends he had the right to confront the actual witnesses against him but instead was left to cross-examine DiValerio "who knew almost nothing." 182 N.J. 338, 350-51 (2005). Defendant points out that DiValerio testified he did not find the contraband, did not observe anyone else find it, could not identify who found it, and could not state who immediately took possession of it. Defendant also avers that "when pressed," DiValerio either recounted what other officers told him, speculated on what other officers "would have" done, or had no recall as to what happened.

21

Defendant argues DiValerio's statements also constituted hearsay as he testified using "we" or the passive voice to explain actions taken by other officers on the scene.

The New Jersey Rules of Evidence generally prohibit the admission of hearsay, N.J.R.E. 802, which is defined as a statement "the declarant does not make while testifying at the current trial or hearing," and that "a party offers in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c).

Here, DiValerio's testimony did not constitute hearsay under N.J.R.E. 801(c). The record shows DiValerio did not provide an out-of-court testimonial statement from the officer who found the cocaine. Rather, DiValerio testified about his observations as the lead detective for the search warrant executed at defendant's residence. DiValerio testified about other actions taken by the officers in defendant's room, which DiValerio observed. Any conflicting testimony about whether DiValerio saw the officer open the bottle—S-2—or not was properly submitted as a fact issue for the jury to decide.

Moreover, defendant never disputed that he was the owner of the cocaine. In fact, in defense counsel's opening statement, counsel stated: "See, at the end of all of this, I think what you'll realize is this was somebody that was a drug user, not a drug dealer." Further in his merits brief, defendant states, "The

ultimate issue at trial was whether the cocaine purportedly found in [his] bedroom was for personal use or for distribution." Thus, we conclude the court did not abuse its discretion in admitting S-2 in evidence and allowing DiValerio to testify, and there was no constitutional violation of defendant's right to confrontation or N.J.R.E. 802's hearsay bar.

III.

Next, defendant argues that the State's introduction of two extra bags of cocaine was a mistake [that] deprived [him] of his rights to due process and a fair trial, citing U.S. Const. amends. V, VI, XIV; N.J. Const. art. I, ¶¶ 1, 9, 10. Though the court struck the testimony and provided curative instructions, defendant contends the harm was not remedied and reversal is required. We disagree.

During DiValerio's testimony, he was asked to count the number of bags contained in S-2. It became apparent that the State had mistakenly placed two extra bags in that exhibit, which came from controlled buys. Defendant objected, and the court immediately gave a curative instruction to the jury before they were discharged for the day. The court clearly and succinctly told the jury it was striking DiValerio's testimony relative to the counting of the bags. The

next morning, defendant moved for a mistrial based on the bags inadvertently contained within S-2.

The court denied defendant's motion for a mistrial but gave the jury an even more detailed curative instruction. In plain terms, the court told the jury DiValerio testified "in error" about the bags of suspected cocaine that were packaged, and the jury was not to consider his testimony on this issue.

Further, in the jury instructions, the court gave detailed instructions on the State's mishandling of the two bags. The court explicitly stated that "[i]t was that State who made a mistake in placing them in the same bag with other evidence," and the jurors "shall disregard any testimony" about those exhibits.

"The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court." State v. Harvey, 151 N.J. 117, 205 (1997). The denial of a mistrial motion should not be disturbed "absent an abuse of discretion that results in a manifest injustice." Ibid. A mistrial is "an extraordinary remedy to be exercised only when necessary 'to prevent an obvious failure of justice.'" Yough, 208 N.J. at 397 (quoting Harvey, 151 N.J. at 205). If there is "an appropriate alternative course of action," a mistrial should be denied. State v. Allah, 170 N.J. 269, 281 (2002).

We will not disturb a trial court's ruling on a motion for a mistrial absent an abuse of discretion that results in a manifest injustice. State v. Jackson, 211 N.J. 394, 407 (2012). Whether the alleged error can be ameliorated by a curative instruction is a part of that discretion:

> The decision on whether inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is one that is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting.
>
> [Winter, 96 N.J. at 646-47.]

The same deference applies to the curative instruction given in lieu of a mistrial. Id. at 647.

The decision to opt for a curative instruction instead of a mistrial depends on three factors: "the nature of the inadmissible evidence and its prejudicial effect," whether the instruction was given in a timely fashion, and whether the evidence created a real possibility that it "led the jury to a result it might not have reached" otherwise. Herbert, 457 N.J. Super. at 505-08.

Applying the Herbert factors to the specific circumstances of the matter before us, we are satisfied the two curative instructions that were delivered in this case were adequate to address any prejudice associated with DiValerio's

25

reference to the additional bags of cocaine. We thus conclude the court did not abuse its discretion in denying defendant's motion for a mistrial and delivering the final jury instructions to address DiValerio's wayward reference to the inadmissible evidence.

With respect to the first factor—the "nature of the inadmissible evidence, and its prejudicial effect"—we stressed in Herbert that trial and reviewing courts should be mindful that "[t]he adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." Id. at 505 (citing Winter, 96 N.J. at 647). In this case, DiValerio's reference to the uncharged cocaine bags, while clearly inadmissible, was in response to a question posed on direct examination about identifying the contents of S-2. The inappropriate testimony occurred only once and was not tied to any of the other evidence introduced at trial.

In Herbert, a detective violated the trial court's express prior ruling twice by alluding to the defendant's membership in a criminal street gang. 457 N.J. Super. at 499. In comparison, we conclude that the prejudice caused by DiValerio's improper testimony in the present matter was less severe.

As to the second factor—relating to the "timing and substance" of a curative instruction—we noted in Herbert that "a swift and firm instruction is

better than a delayed one." Id. at 505–06. There, we explained that "[d]elay may allow prejudicial evidence to become cemented into a storyline the jurors create in their minds during the course of trial." Ibid.; see also State v. Vallejo, 198 N.J. 122, 135 (2009) (stressing the importance of immediacy when trial judges provide curative instructions).

In the present matter, the court immediately instructed the jury to completely disregard DiValerio's reference to the uncharged cocaine bags right after the mistake was realized, on the next day before his testimony continued, and then followed through by amplifying the initial curative instruction in the final jury charge. These instructions placed fault solely on the State. The final jury charge included instructions on credibility of witnesses, and false in one false in all.

We further recognized in Herbert that the substance of a curative instruction, in addition to its timing, will "affect [the] likelihood of [its] success." Id. at 505. Particularly, "[a] specific and explanatory instruction is often more effective than a general, conclusory one." Id. at 506. In Vallejo, the Court likewise "stressed the importance of [both] immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant from inadmissible evidence that has seeped into a trial." 198 N.J.

at 135. As we observed in <u>Herbert</u>, a conclusory curative instruction akin to telling the jury to disregard testimony "[b]ecause I said so" may be ineffective in correcting improper statements. 457 N.J. Super. at 506. Trial judges, therefore, should provide "enough specificity to enable the jury to follow the instruction." <u>Id.</u> at 507. "The instruction must be 'clear enough [and] sharp enough to achieve its goal.'" <u>Ibid.</u> (alteration in original) (citing <u>Vallejo</u>, 198 N.J. at 136-37).

In the present case, the court did more than tell the jury to disregard DiValerio's reference; the court struck his inappropriate testimony and repeated that instruction the next day. Those explanations were adequate to enable the jury to follow the instructions.

As to the third factor in the <u>Herbert</u> analytical paradigm—"the risk of imperfect compliance"—we are satisfied that there is no basis upon which to assume that the jury did not follow the court's clear instructions. In <u>Herbert</u>, we explained,

> even in criminal cases involving errors of constitutional dimension, "not 'any' possibility [of an unjust result] can be enough for a rerun of the trial." "The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." By contrast, a non-constitutional error "shall be disregarded by the

appellate court 'unless it is of a nature as to have been clearly capable of producing an unjust result.'"

[Id. at 507-08 (alteration in original) (citations omitted)].

We noted, however, that the guiding precedents do not "require[] an 'overwhelming probability' that the jury cannot comply, in order to conclude a curative instruction was inadequate." Id. at 508 (quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)).

Given the stark differences between the repeated infractions that occurred in Herbert involving the inherently prejudicial status of gang affiliation and the single transgression in the present matter regarding DiValerio's reference to the uncharged bags of cocaine, we decline to assume that the jury in this case did not dutifully follow the court's instructions. See State v. Ribalta, 277 N.J. Super. 277, 292 (App. Div. 1994). In sum, we are satisfied the court adequately rectified any prejudice to defendant by means of the decisive and specific curative instructions, and a mistrial was not warranted.

IV.

Next, defendant contends that the court's jury instruction on possession of a firearm while committing certain drug crimes under N.J.S.A. 2C:39-4.1(a) did not comply with our Supreme Court's decision in State v. Spivey, 179 N.J. 229

(2004). The <u>Spivey</u> Court held the jury is to be informed of at least "a temporal and spatial link between the possession of a firearm and the drugs that defendant intended to distribute." <u>Id.</u> at 239. Defendant contends the jury needed to conclude that the handgun and cocaine were "related to a common purpose." <u>Id.</u> at 240. Instead, the court told the jury nothing about the required nexus. Defense counsel did not request any revisions or different instructions. Therefore, we review for plain error. <u>R.</u> 2:10-2.

N.J.S.A. 2C:39-4.1(a) states: "Any person who has in his [or her] possession any firearm while in the course of committing, attempting to commit, or conspiring to commit a violation of . . . N.J.S.[A.] 2C:35-5 . . . is guilty of a crime of the second degree." Here, the court gave the jury the model jury instruction for this offense and specifically stated the State must prove:

> that [defendant] possessed the firearm while he was in the course of committing, attempting to commit, or conspiring to commit the crime of possession with the intent to distribute cocaine. The term in the course of committing means that, at the time . . . defendant possessed the weapon, he was also committing a drug crime, namely possession with the intent to distribute cocaine.

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." <u>State v. Afanador</u>, 151 N.J. 41, 54 (1997). "Correct jury instructions are 'at the heart of the proper execution of the jury

function in a criminal trial.'" Ibid. (quoting State v. Alexander, 136 N.J. 563, 571 (1994)). The trial judge must explain the law as it relates to the facts and issues of the case. State v. Baum, 224 N.J. 147, 159 (2016). Erroneous jury instructions on "material" aspects are assumed to "possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

Incorrect instructions are "poor candidates for rehabilitation under a harmless-error analysis," State v. Rhett, 127 N.J. 3, 7 (1992) and are "excusable only if they are harmless beyond a reasonable doubt." State v. Vick, 117 N.J. 288, 292 (1989). "As an indication of the paramount importance of accurate jury instructions, we have held that erroneous instructions on material issues are presumed to be reversible error." State v. Marshall, 173 N.J. 343, 359 (2002).

A reviewing court must evaluate the jury charge in its entirety to determine its overall effect. State v. Savage, 172 N.J. 374, 387 (2002). We do so "to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case." State v. LaBrutto, 114 N.J. 187, 204 (1989).

Rule 1:7-2 provides that "[e]xcept as otherwise provided by R[ule] 1:7-5 and R[ule] 2:10-2 (plain error), no party may urge as error any portion of the

31

charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict. . . ."  See State v. Montalvo, 229 N.J. 300, 320 (2017); State v. Burns, 192 N.J. 312, 341 (2007); State v. Torres, 183 N.J. 554, 564 (2005); State v. Kille, 471 N.J. Super. 633, 641 (App. Div. 2022). See also Rule 1:8-7 (governing requests to charge in civil and criminal cases).

In the context of a jury charge, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'"  Montalvo, 229 N.J. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).  See Burns, 192 N.J. at 341; State v. Jordan, 147 N.J. 409, 422 (1997).  "The error must be evaluated 'in light of the overall strength of the State's case.'"  State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

We review a trial court's instruction on the law de novo.  Fowler v. Akzo Nobel Chemicals, Inc., 251 N.J. 300, 323 (2022); State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., L.P., 426 N.J. Super. 337, 347 (App. Div. 2012).

Additionally, jury instructions which follow or closely track model charges are generally not considered erroneous. State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008). Alleged errors in jury instructions are reviewed in the context of the overall charge, not in isolation. Chapland, 187 N.J. at 289. We "consider the overall effect of the charge and look at the language in context to see whether the jury was misled, confused or inadequately informed." Jefferson v. Freeman, 296 N.J. Super. 54, 65 (App. Div. 1996). The charge "as a whole" cannot be misleading, and it must "set[] forth accurately and fairly the controlling principles of law." Baum, 224 N.J. at 159 (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)).

Here, the court's jury instruction on N.J.S.A. 2C:39-4.1(a) essentially mirrored the model jury charge. In Spivey, our Supreme Court mandated an evidentiary requirement that the State is obligated to prove beyond a reasonable doubt, not a required jury instruction. The instructions comported with Spivey, and there was no plain error.

V.

Finally, for the first time on appeal, defendant challenges the constitutionality of N.J.S.A. 2C:39-4.1(a). Defendant asserts that under the framework of N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), the

court's "errant application" of N.J.S.A. 2C:39-4.1(a) violated his Second Amendment rights, which defendant contends presumptively protects his right to possess a handgun at home for self-defense. Defendant argues the State failed to prove that the statute, as applied by the court here, is consistent with the nation's historical tradition of firearm regulation.

We decline to address this argument. Defendant did not present this argument before the court, and we do not consider arguments—including those of constitutional magnitude—raised for the first time on appeal unless they go to the court's jurisdiction or concern matters of significant public interest. State v. Robinson, 200 N.J. 1, 19-20 (2009). Neither extant circumstance exists here.

We also decline to consider the argument because defendant's failure to assert it deprived the court of the opportunity to develop the record necessary for disposition of the claim and thereby rendered the appellate record inadequate to properly address it. See id. at 21 (declining to consider a constitutional issue on appeal in part because defendant's failure to raise the issue before the trial court "denied [the] reviewing court the benefit of a robust record within which the claim could be considered"). For example, the record does not permit a determination as to whether N.J.S.A. 2C:39-4.1(a) is inconsistent with this "[n]ation's historical tradition" or whether defendant's "conduct falls outside

the" protections of the Second Amendment under the <u>Bruen</u> standard.  <u>State v. Wade</u>, 476 N.J. Super. 490, 502 (App. Div. 2023).

We also note that defendant's failure to raise his Second Amendment claim before the court deprived the State of the opportunity to establish a record supporting the constitutionality of the challenged statute, N.J.S.A. 2C:39-4.1(a). For these reasons, we conclude the record is inadequate to permit a proper review of the arguments presented for the first time on appeal and deprived the State of the opportunity to develop the record to support its opposition.  <u>See</u> <u>Robinson</u>, 200 N.J. at 21.[2]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[2] We note that the State argues in a footnote in its brief that defendant received an illegal sentence that requires correction.  The State contends defendant's third-degree offense in count one merged into count two, a second-degree offense.  But, defendant received only a three-year sentence, despite N.J.S.A. 2C:43-6(a)(2) setting the range of imprisonment for second-degree crimes be fixed between five and ten years.  When offenses merge, the State asserts the court must impose "the more severe aspects of the sentence for each offense." <u>State v. Robinson</u>, 439 N.J. Super. 196, 200 (App. Div. 2014).  The State did not file a notice of cross-appeal relative to this issue in violation of <u>Rule</u> 2:3-4(a). Therefore, we do not consider it.